Good morning. May it please the Court, my name is Bob Wolfram and I represent Robert Beyer. This case, in a few sentences, Robert Beyer began a company, Heroic Life Assurance, back at the end of 2011, the beginning of 2012. He sought and he got money from various investors. The alleged victims in the case were people for whom he had been a financial advisor. The government charged a scheme to defraud. Their position was that the whole thing had been a fraud from the beginning for him to take these people's money. The defense, also in a nutshell, in a couple of sentences, was good faith. That on the dates charged, he did not intend to defraud the people from whom he got money. The defense was basically that he was an incompetent, overconfident businessman, but not a crook. That he wasn't qualified to start a life insurance company, but he went ahead and did so anyway. In opening statement, the defense counsel referred to his business process as basically ready, fire, aim. That he really wasn't competent to start a life insurance company. The first point that I would like to talk about is actually point two in the brief. It concerns the court's application of the vulnerable victim enhancement. That application resulted in a miscalculation of the guidelines. And I want to talk about it first because I think it's a very important matter as a point of policy and law for the courts. That enhancement in this case was applied without any particularized findings of why these people were allegedly vulnerable victims. Counsel, can I interrupt you? Sure. When I looked at the sentencing hearing transcript, there's testimony from two witnesses. You all argue with the judge clearly what the rule is. You say it must be fact-based. You talk about why the facts don't work. I know the judge at the end gives only one sentence. But when you read those 40 pages, don't you think it meets the standard? I do not. Tell me what part it doesn't meet. Well, these people, and I think it's important to note, the pre-sentence investigation report writer who wrote the report said they're not vulnerable victims. Correct. The government objected. Go ahead. And this was a very experienced pre-sentence investigation report writer who's not a pushover on these kinds of things. And the government lawyer wasn't a pushover either. Go ahead. That's true. And, you know, what I was going to say, and I will talk about the specific characteristics why these people weren't vulnerable victims. But I think this is an important area that requires vigilance by courts of appeals because if this enhancement or this characteristic isn't held to have real requirements and real meanings, you can almost say that any victim of a successful fraud was vulnerable because they were, in fact, successfully defrauded. And if the enhancement doesn't have real requirements and meanings, it's subject to abuse. And it's subject to being used as punishment for a person exercising their right to trial. And I know there's some discussion that guidelines aren't subject to vagueness challenges, but it's also subject to that kind of problem if it doesn't have real standards and meanings. And the court's ruling on it, and I understand there was evidence, but the court's ruling on it was basically the government's objection is sustained. Four pages before that, the district judge says the Eighth Circuit has noted that this enhancement requires ‑‑ this is the judge talking, right? Yes. The Eighth Circuit has noted this enhancement requires facts that support an explanation of why advanced age or something made one or more. You know what that says. You know what you argued. And the court actually cited, I believe it was the Fiorito case, which cited Anderson and talked about the need for particularized findings. And the particularized findings give later courts something to review and help guarantee against abuse. What facts were in dispute? Because it seems to me that you didn't object to the circumstances of the individual victims, the alcoholism, the disability, the physical problems. What was in dispute that you feel the court did not proceed with a specific resolution? Well, the enhancement ‑‑ I understand targeting based on that is not required. But the enhancement requires a finding of unusual vulnerability and that it made the victim more susceptible to any alleged scheme. And, well, I guess getting to the specifics of these victims, and the probation office said they didn't invest with him because they were unusually vulnerable. They invested with him because ‑‑ and the transcript reveals, because he had a history of getting good results for them. They were satisfied with his previous financial advice. All four testified that they had ‑‑ well, certainly the two that were in dispute testified that they had evaluated his prior service. They thought his prior work for them had been good. And they had decided to invest. Some of the standards ‑‑ there's no showing of a lack of investment sophistication on the part of any of these people. Just actually the contrary, I think the transcript reveals that. And the government talks about financial distress, and there was no showing that any of these people were in financial distress, like the people in the Jock Who case that the government cites, when they made the decision to invest. And I think one of the big flaws with the government's argument is, particularly with regard to victim Robinson, is they concentrate on his condition after the offense, and not his condition when he made the decision to invest. But speaking specifically about ‑‑ But weren't both of these victims on limited income? No, I don't think that's ‑‑ well, I think as regards to the feigns, in the transcript, the government called one of Bayer's previous employers, John Huang, who testified, and this wasn't a term I was familiar with before this case, he testified that the feigns were qualified investors, and I believe at page 165 of the transcript, volume 2, he testified that the feigns had over a million dollars in assets. And Robinson ‑‑ But he could have no income. I think the question was about income. The testimony was unable to earn income. I don't think there was testimony as to them having regular income, but Huang testified that they had over a million dollars in assets. Feign testified that he invested based on representation of a high return, that he was always trying to get the best return for his money, that he had previously invested in risky investments, including a movie. And this also cuts against vulnerability. He testified that ‑‑ and out of what was perhaps a million dollars in assets, their investment was $10,000, which I think shows a degree of caution and sophistication. It's not like they invested the farm. And there was testimony that after this initial investment, Bayer came to them and asked them to invest some more, and they fairly intelligently said we haven't seen a return on our first investment, no. And I think that cuts against vulnerability. As I said, Feign said he had a broker and invested in stocks and bonds. John Huang said he had over a million dollars in assets. And another thing regarding the feigns that cuts against vulnerability is, and Mr. Feign testified to this at the sentencing hearing, is he got his investment back, and he said he did it without the assistance of an attorney from the Washington National Insurance Company. And I think that also cuts against vulnerability, that if you believe him, he was able to get his investment back without the assistance of an attorney. You mentioned a $10,000 investment. What were the investment amounts for the two victims at issue? Feign's was the least. Feign's was $10,000. Robinson's, I think the transcript would reflect it was over $200,000. It was slightly over $200,000. And I think with Robinson, the government concentrates on his condition after the offense. And I would say there are other enhancements, if that applies, that cover the consequences of the offense, but the vulnerable victim is intended for the condition of the victim prior to it. What do you mean the condition after? That it had substantial financial impact on him. The financial impact. Right. And that he needed the money. Not that he developed some kind of vulnerability after. No, not that he developed a vulnerability. I mean, the Jokhu case that talks about financial distress involves people who were in financial distress prior to the alleged scheme. And Robinson testified he had a large railroad settlement and that he also had a pension from the railroad. He was not in financial distress at the time he made the decision to invest. And he also, through his testimony, indicated some degree of financial sophistication. I believe this court should remand for resentencing without this enhancement. I believe the court's lack of findings at a minimum call for a remand for findings on this issue. With a limited amount of time, I would like to talk about one other point. Point one in the appellant's brief concerns the introduction over objection of evidence that Robert Beyer withdrew $300 from an ATM at a place called the Penthouse Club, which I think in the transcript the party- Did he more than put this at issue when he talked about, oh, I was just trying to do a business and just using it on expenses and trying to build a company? I understand what the court's saying, but I think the prejudice of that, especially in the light of the rest of the government's case, far outweighs any probative value that $300, a $300 withdrawal at a strip club has. Because in the course of showing, as the government does in these kinds of cases, where the money went in sort of an exhaustive, painstaking examination of bank records, they introduced this strip club withdrawal. And their justification, and I think strategically they did this early on, their justification was, you know, it's really so hard to show where money goes in these kinds of cases, but because of where it was, the jury can figure it out. And I don't think their explanation of the difficulty of proof is borne out by the rest of the transcript. Because without objection, they subsequent to this introduced evidence that $23,000 was spent on personal bills, $20,000 on retail purchases, $12,000 on auto repairs, and other things, payments to- Do you have a case that's kind of for you? The Shrum case and the Abedeli case are pretty bad for you. I disagree because those are tax cases, which is a different situation. And one's prostitution and one's gambling. That's like a strip club. But in a tax case, those cases relate to- Here, we've got a very minimal, unnecessary, unnecessarily prejudicial amount of money. And just to develop this very quickly, the reason it was prejudicial was because he gave one of his investors, a woman named Robin Matchnick, all of her $75,000 back. And the government very cleverly- And that was a problem the government thought they had to explain. And the government very cleverly distinguished her from the other investors in the case because the other investors were elderly married couples. And she was a younger physical trainer. And they said, summarizing, you can- And the jury had seen Ms. Matchnick. And they said, you can figure out for yourself, having seen her, why he gave her the money back. And it was prejudicial because they used that evidence to suggest him giving her money back wasn't evidence of a lack of intent to defraud, but just maybe a stronger urge had taken over is what they were trying to argue. And that's why it was prejudicial. I'm well into my rebuttal time, and thank you. Very well. Ms. Collins, we'll hear from you for the government. Thank you, Your Honor. May I please support Diana Collins representing the United States? I'd like to begin our discussion talking about the vulnerable victim enhancement and particularly the standard of review. While the court reviews the district court's interpretation of the guidelines as de novo, it reviews its finding of facts for clear error. Additionally, the district court's finding that the vulnerable victim enhancement applies need only to be supported by a preponderance of the evidence. Did the district court make findings? It did not, Your Honor. Okay. Go ahead. The evidence in this matter by far meets that standard. The vulnerable victim enhancement says that the defendant knew or should have known that the victim had a vulnerability and that that vulnerability made him susceptible to the criminal conduct. So it somewhat sets out a three-part process for us. One is to identify what the vulnerability is, whether it be age or diminished mental capacity or some other characteristic. Two is to determine whether or not that vulnerability, using the facts in the case, would make that victim more susceptible to that criminal conduct. And then three is to understand whether or not the defendant knew or should have known of that vulnerability. The facts in this case during trial and at sentencing show that victim Fain and victim Robinson were both vulnerable victims. Victim Fain was a vulnerable victim not because of his general tendency to drink or because he was an alcoholic. It was because he was intoxicated at the time that he made the investment. Victim Fain's wife testified during trial on cross-examination, not on direct, that her husband was intoxicated at the time and that a reasonable person would have known that. Mr. Fain testified at sentencing that he, in fact, was intoxicated at the time that he made the investment and that the defendant would have known that. Additionally, there was conversation between Mr. Fain and Mrs. Fain about whether or not they wanted to make this investment. Mrs. Fain, who was of sound mind at the time, said, No, this is not an investment that we should make. Mr. Fain, who was intoxicated at the time, said, Yes, this is an investment we should make. The sound mind said, No. The drunk mind said, Yes. This is a textbook example of a vulnerable victim based on diminished mental capacity. Is that your only grounds that you support the vulnerable victim enhancement on for that victim? For that victim, yes, Your Honor. In addition to that, this court Now, when you said the only grounds, are you saying alcoholism? diminished mental capacity at the time that he made the investment. And this is for victim Fain. The two witnesses who testified at the sentencing hearing after the government objected, did they testify as to this? Yes, Your Honor. This is victim Fain that I'm referring to. And then there was also victim Robinson. Okay, good. So those two witnesses actually were the two who testified. Yes, Your Honor. Okay, good. Thank you. This court has found that financial distress as well as a lack of investment sophistication may be factors that make one vulnerable to financial fraud. So victim Robinson also testified at the sentencing hearing. And he testified that in the late 1990s he was in a trail derailment that made him 100% disabled. From that, he received a settlement of approximately $315,000. And this was his sole income. The defendant knew of this because he was his investment advisor at the time and helped him invest that money. In addition to that, the defendant knew that Robinson lacked investment sophistication and that Robinson had to depend on the defendant to help him make day-to-day transactions to receive money to help him live. Did Robinson really say, I'm not a sophisticated investor? Was that his real testimony? He did not make that exact statement. What did he exactly say? Well, he said that he had $315,000 to last him his entire life. He testified that on the day of that sentencing, that even he received money from his wife and his mother to help him get gas in his car. So he paints the picture that the $315,000 that he depended on from that settlement had to last him his entire life. And that trail derailment happened when he was approximately 40 years old. He also got a disability pension, though, right? He did, Your Honor. How does that make him? And that makes him, I suppose, in a precarious financial situation, concerned about the future. But how does that make him particularly vulnerable to an investment? What is the evidence that he was vulnerable to how he invested his money? Evidence on that is that, well, knowing at 40 years old that you only have $315,000 plus a small pension to last you your entire life, I think puts you in a position where you are more willing to perhaps close a blind eye to things that are obvious in what the defendant was telling the investor. So are those facts alone enough for us to find or for a district court to find that that's a vulnerable victim because simply their financial situation in combination with their age? Is that enough? It can be, Your Honor. I mean, it's all fact-based. So tell me on this one, is that enough in this case or was there more? It should be enough for Victim Robinson. But if this court does not believe that it is, it's important to remember that this court only needs to find that the defendant knew of one such vulnerability for one victim to uphold the district court's application. So regardless if it's Victim Fane with a diminished mental capacity or if it's Victim Robinson because he had financial distress and he lacked sophistication, either one of those or a combination of such should be enough to uphold the district court's application. Now, I asked you quickly and you said quickly. The district court made no findings. Correct. The district court did not say which vulnerable victim or which vulnerability it found. But this court can affirm for any reason based on the record. Well, how does that fit with the Anderson case? The district court acknowledged, I think quoted from maybe a different case, but certainly quoted the Anderson standard, where the court must give a fact-based explanation. How are you going to square that with this record? There were 40 pages of transcript, right? The court had just listened to. That is correct, Your Honor. And the court says, I'm going to sustain the government's objection. Did you have a written objection? The government, I mean, not you personally. Go ahead. The prosecutor in this case did object to the fact that the pre-sentence report did not include the vulnerable victim enhancement. So that was the objection. Do you know if it was written? I'm sorry, Your Honor, I know I'm interrupting you, but do you know if it was written, the actual objection? Yes, it was, Your Honor. Okay, great. And was it medium-specific? That's pretty open-ended. How specific was it is the real question. It listed for the court why it felt as if the vulnerable victim enhancement should apply. It listed the testimony would be given at sentencing. It also listed testimony that had already occurred at trial. So from that, the district court sustained the government's objection to the pre-sentence report. Did the district court have that objection when it made its statement on page 43 of the transcript? It did, Your Honor. Thank you. I'd also like to address, unless there's other questions on the vulnerable victim enhancement, I'd also like to address the admission of the location evidence. When I say location evidence, I'm referring to the $300 that was drawn from the ATM at the Gentleman's Club. Now, when the prosecutor was about to present evidence on this topic, he alerted the court that he believed there was going to be an objection to this. And a sidebar was called. The judge immediately asked the prosecutor why this information was relevant, and the prosecutor explained that this is a fraud case, and that the defendant had promised to invest the victim's money with guaranteed returns and instead had used it for personal benefit. The prosecutor also explained much of which our defense counsel said this morning, is that the defendant believed that he had good intentions and had used some of the money for business purposes. The prosecutor presented this evidence to rebut that presumption. After the prosecutor explained why this information was relevant, the defense counsel said, in light of the overwhelming amount of expenses and money that were spent, why they need to focus on a couple hundred dollars at a strip club I think is prejudicial. I think the prejudicial value outweighs the probative effect. This is clearly a 403 objection. At no time at the sidebar was any mention made of a 404B argument. Because this was a 403 objection, this court- Did they say 403? I'm sorry if you said it while I was looking at the brief. Did- Yeah, were the numbers 403 said at the sidebar? The numbers 403 were not said. However, defense counsel said, I think the presidential value outweighs the probative effect. So because this was a 403- In addition, Your Honor, there was no mention of 404B. There was no dog-whistling words that would evoke one to believe that this was a 404B argument. No one talked about motive or intent. No one talked about prior bad acts or conformity. This was truly a 403 objection. And because of that, this court should review this for an abuse of discretion. And even if this court finds that the district court abused its discretion, it should be subject to a harmless error review. This is not 404B evidence. This is direct evidence of the crime that was charged. If for some reason this court believes that it was 404B evidence, and I would submit to you that the court- Or that the prosecutor introduced this evidence to show the intent to defraud. In addition, the prosecutor would have introduced this information to show that the defendant had a motive for taking the investor's money. The government had a number of other ways to prove the intent, did it not? How important was this $300 cash withdrawal to the government's case? Overall, Your Honor, there was a loss amount of approximately $330,000. $30,000 of that was cash. So the government went through, as defense counsel said, went through painstaking ways of showing exactly where the money goes, especially in a fraud case. The government produced evidence that $300 was withdrawn at ATM at a national park in Kentucky, for the same reason that it showed that the $300 was withdrawn at the Gentleman's Club over in Illinois. It's to show that more likely than not, the defendant used the money for his own personal gain and benefit, and not for the benefit of the investors. Is what Mr. Wolfram said accurate about the evidence that came in later that thousands of dollars were spent on personal bills, and I forget what else he said, maybe automobiles or other things that were clearly personal? Is that an accurate statement? I did not completely follow Mr. Wolfram's argument on that. He put $300 in because it's really hard to show that the money was spent on personal things in other situations, but then later he says the government showed that indeed thousands of dollars were spent on personal things, so that the previous argument about the $300 was shown to be disingenuous, I think, is more or less what he was saying. What's your answer to that? The $300 was easily trackable, and so that's probably what Mr. Wolfram is referring to. How much? The $300,000 was easily trackable. $300,000? $300,000 was easily trackable for personal use, and that is probably what Mr. Wolfram is referring to. The $30,000 was cash withdrawals. The prosecutor decided to start the case in talking about the cash withdrawals, how difficult it is to track where cash goes. You're saying you didn't have other evidence on the cash withdrawals that came in later? We showed that $300 was withdrawn at a national park, and we showed that $300 was withdrawn at this gentleman's club. So in trying to track down where the cash went, that was the evidence that the government provided. And what was the $300,000? The $300,000 was not cash, so we were able to find that through credit records or bank records regarding checks and wires and things of that sort. So you're saying as to the $30,000 cash, you didn't have other evidence beyond these two $300 withdrawals? Correct, Your Honor. Not of any of the cash? Not of any of the $30,000? The $300 that was withdrawn at the national park, and the $300 that was withdrawn at the gentleman's club. Total of $600, and the other $29,000 you have really no evidence on?  Yeah, where it went. So the defense counsel says that he believes that the $300 that was withdrawn at the gentleman's club is somehow unfairly prejudicial, because it shows that the defendant spends time and or money in a gentleman's club. He says in his reply brief that the jury is left to believe that perhaps the defendant used that money and spent that time in the gentleman's club on things such as laptops. Bandages, fetish play, drug purchases, prostitution. But what I'd like to remind this court is that in United States v. Shrum, this court said that the prosecutor cannot be limited from making a proper determination or demonstration because the defendant used the money for questionable ends. That would simply be equivalent to a drug case in which a prosecutor would not be able to show what the drug dealer did with the money simply because he put it to questionable ends. So given the broad discretion that's given to this district court in determining whether evidence is unfairly prejudicial, this evidence was properly admitted under 403. I noted that Mr. Wolfram did not get to the third point that was in the briefs, and unless this court has questions on whether or not Judge White was aware that he was able to depart downward, I will not address that. Thank you. All right. Thank you for your argument. Mr. Wolfram, you have one minute remaining for rebuttal. Thank you, Your Honor. On the vulnerable victim point, the court did not make findings. I think the district court is in the best position to evaluate because the district court sees the witnesses and to determine credibility. If you examine the transcript, there were disputes of fact between Fain and his wife. He said, I got the money back without hiring an attorney, and his wife contradicted him on that. So the district court didn't make findings. They're talking about diminished mental capacity here today. The district court didn't make any such finding. There was no medical testimony. And I would just be wary of the government saying, there's 40 pages. Surely you can find something there. What about the district court adopting the objection of the government? As you said, under Anderson, I think the district court, if it's going to apply this enhancement that is very possibly subject to abuse, as I've earlier said, I think particularized factual findings are crucial. All right. Thank you for your argument. The case is submitted, and the court will file an opinion.